1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NATHAN GRIFFIN, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

v.

STELLANT SYSTEMS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No. 2:25-CV-06760-SPG-SK
2:25-CV-09615-SPG-SK

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT STELLANT SYSTEMS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 14]; AND CONSOLIDATING ACTION**

Before the Court is the Motion for Judgment on the Pleadings, (ECF No. 14-1 ("Motion")), filed by Defendant Stellant Systems, Inc. ("Defendant"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS, in part, and DENIES, in part, the Motion.

-1-

## I.    BACKGROUND

Plaintiff Nathan Griffin ("Plaintiff") was employed as an hourly non-exempt employee of Defendant from September 2021 through February 2025.  *See* (ECF No. 1-2 ("Complaint") ¶ 18).

Plaintiff initiated this action in Los Angeles County Superior Court on May 21, 2025, asserting the following ten claims based on allegations that Defendant engaged in a series of illegal pay practices: (1) failure to pay overtime, in violation of California Labor Code §§ 510 and 1198; (2) failure to authorize and permit meal periods, in violation of Labor Code §§ 226.7 and 512(a); (3) failure to authorize and permit rest periods, in violation of Labor Code § 226.7; (4) failure to pay minimum wage, in violation of Labor Code §§ 1194, 1197, and 1197.1; (5) failure to timely pay all earned wages and final paychecks at the time of separation, in violation of Labor Code §§ 201 and 202; (6) failure to timely pay wages during employment, in violation of Labor Code § 204; (7) failure to provide complete and accurate wage statements, in violation of Labor Code § 226(a); (8) failure to maintain payroll records, in violation of Labor Code § 1174(d); (9) failure to reimburse employment-related expenses, in violation of Labor Code §§ 2800 and 2802; and (10) unfair business practices, in violation of California Business and Professions Code § 17200.  *See* (Compl. ¶¶ 51–121).  Plaintiff seeks to represent a putative class of current and former hourly non-exempt employees of Defendant in California.  *See* (*id.* ¶ 13).  As a remedy, Plaintiff seeks monetary, declaratory, and injunctive relief.  *See* (*id.* at 24–29).

On July 22, 2025, Defendant filed its Answer to Plaintiff's Complaint, which consists of a general denial of Plaintiff's allegations and 39 separate affirmative defenses.  *See* (ECF No. 1-4 ("Answer")).  As relevant here, Defendant argues that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").  *See* (*id.* ¶ 33).  On July 24, 2025, Defendant removed the case to federal court, invoking the Court's federal question jurisdiction under the LMRA.  *See* (ECF No. 1 ¶¶ 1–3). [1]

---

[1] "Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary preemptive power' that it 'converts an ordinary

Defendant filed the instant Motion on September 10, 2025. *See generally* (Motion). Defendant primarily argues that Plaintiff's claims are preempted by the LMRA and, therefore, must be dismissed. *See* (*id.* at 11–26). Defendant also argues Plaintiff has failed to adequately plead an expense reimbursement claim. *See* (*id.* at 22–24). Defendant simultaneously filed a Request for Judicial Notice. *See* (ECF No. 14-4 ("RJN")). Plaintiff filed his opposition to the Motion on September 17, 2025, *see* (ECF No. 19 ("Opp.")), and Defendant filed its reply on September 24, 2025, *see* (ECF No. 20 ("Reply")).

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for Rule 12(c) motions is "functionally identical" to the standard for determining a motion to dismiss under Rule 12(b)(6). *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation omitted). Accordingly, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court need not accept as true factual allegations that are conclusory or conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Judgment on the pleadings may be granted where, taking the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *See Gregg*, 870 F.3d at 886–87.

When ruling on a motion for judgment on the pleadings, a court may consider documents that the pleadings incorporate by reference, as well as matters that are subject to judicial notice. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1159–60 (9th Cir. 2012). A court also may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

_____

state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Thus, "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.*

plaintiff's pleading." *Id.* at 1160 (internal quotation marks, alteration, and citation omitted). A court is not, however, "required to accept as true allegations that contradict exhibits attached to the [c]omplaint" or that contradict "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## III.    REQUEST FOR JUDICIAL NOTICE

At the outset, Defendant requests that the Court take notice of five documents: (1) a 2018 Collective Bargaining Agreement (the "2018 CBA") between L3 Technologies, Defendant's predecessor entity, and the United Brotherhood of Carpenters and Joiners of America, Local 721 (the "Union"), effective October 22, 2018, through October 23, 2022, *see* (RJN, Ex. 1, at 7–114); (2) a 2022 Collective Bargaining Agreement (the "2022 CBA" and together, with the 2018 CBA, the "CBAs") between Defendant and the Union, effective October 23, 2022, through October 22, 2026, *see* (RJN, Ex. 2, at 116–227); (3) California's Industrial Welfare Commission ("IWC") Wage Order 1-2001, *see* (ECF No. 14-4, Ex. 3, at 229–239); (4) a 2019 Minimum Wage Order from the California Department of Industrial Relations, *see* (RJN, Ex. 4, at 241); and (5) a 2024 Minimum Wage Order from the California Department of Industrial Relations, *see* (RJN, Ex. 5, at 243).[2]

Plaintiff argues that the Court should not take judicial notice of the CBAs for two reasons. First, Plaintiff claims that the Complaint and Request for Judicial Notice fail to establish that Plaintiff was covered by the CBAs while employed with Defendant. *See* (Opp. at 7). Second, Plaintiff argues that "the Request for Judicial Notice does not authenticate the documents attached as Exhibits 1 and 2, which purport to be CBAs." (*Id.*). Plaintiff does not otherwise oppose Defendant's Request for Judicial Notice. *See generally* (Opp.).

---

[2] Hereinafter, all references to "Exhibits" refer to the exhibits attached to Defendant's Request for Judicial Notice.

On a motion for judgment on the pleadings, courts generally may not look to any material beyond the pleadings when assessing the sufficiency of a complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[R]eview is limited to the complaint." (internal quotation marks and citation omitted)). If a court considers extrinsic evidence, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, courts may consider the contents of certain extrinsic documents under the doctrines of incorporation-by-reference and judicial notice without converting a motion for judgment on the pleadings to a motion for summary judgment. *See Lee*, 250 F.3d at 688.

Judicial notice under Federal Rule of Evidence 201 authorizes courts to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (b)(1)–(2). A court, however, may not "take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Notwithstanding Plaintiff's objection, the Court will take judicial notice of the CBAs. "Courts routinely take judicial notice of CBAs, especially when reference to the CBA is required to resolve issues of preemption." *Allmaras v. Univ. Mech. & Eng'g Contractors, Inc.*, No. 24-CV-02021-GPC-SBC, 2025 WL 454713, at *2 (S.D. Cal. Feb. 11, 2025); *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192–93 (C.D. Cal. 2015). "[B]ecause complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *as amended* (July 28, 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

In connection with the Notice of Removal, Defendant submitted a declaration by Maria Garcia, a Senior Human Resources Manager with Defendant, wherein Garcia states that Plaintiff was a member of the Union and subject to the CBAs throughout his employment. *See* (ECF No. 1-6 ("Garcia Decl.") ¶ 5); *see Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 749 (S.D. Cal. 2021) (considering declaration attesting that plaintiff was union member on motion to remand); *Nguyen v. Boeing Co.*, No. C10-0415MJP, 2010 WL 2102501, at *2 (W.D. Wash. May 25, 2010) (considering declaration to establish union membership for purposes of § 301 preemption on motion to dismiss). Garcia further authenticated the CBAs as "true and correct cop[ies]" of, respectively, the "CBA in effect from October 22, 2018 through October 23, 2022" and the "CBA in effect from October 23, 2022 through the present." (Garcia Decl. ¶ 6). By contrast, Plaintiff has not filed any documents that challenge whether he was a member of the Union or whether Exhibits 1 and 2 are true and correct copies of the operative CBAs. *See* (Opp. at 7); *see also Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) ("Plaintiffs argue that the CBA's accuracy '*can* reasonably be questioned,' but do not actually dispute that Sealy has provided an authentic copy of the CBA." (internal citation omitted)). The Court therefore GRANTS the Request for Judicial Notice as to the CBAs.

The Court further GRANTS the Request for Judicial Notice as to the IWC Wage Order and the California Department of Industrial Relations Minimum Wage Orders as "public record[s] that [are] not subject to reasonable dispute." *Chavez v. Air Prods. & Chems. Inc.*, CV 14-06360-BRO (PJWx), 2016 WL 9558905, at *6 (C.D. Cal. Feb. 24, 2016) (taking judicial notice of IWC Wage Order).

## IV.  DISCUSSION

Turning to the instant Motion, Defendant primarily argues that Plaintiff's state law claims are preempted by Section 301 of the LMRA. *See* (Motion at 14–25). Defendant contends that, because the claims are preempted, Plaintiff was required to exhaust the mandatory grievance and arbitration provisions in the CBA, and his failure to do so requires

dismissal.  *See* (*id.* at 25–27).  As noted, Defendant also argues that Plaintiff's cause of action for unpaid expense reimbursements fails to state a claim.  *See* (*id.* at 22–24).

### A.    Section 301 Preemption

Under Section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  The Supreme Court has interpreted this provision "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  This body of federal common law "preempts the use of state contract law in CBA interpretation and enforcement."  *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 689 (9th Cir. 2001).  "Once preempted, 'any claim purportedly based on a state law is considered, from its inception, a federal claim, and therefore arises under federal law.'"  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (cleaned up) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Importantly, however, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301."  *Allis-Chalmers Corp.*, 471 U.S. at 211.  To determine what claims are preempted by § 301, the Ninth Circuit has articulated a two-step inquiry.  A court must first "determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (internal quotation marks and citation omitted).  A court must consider whether the "legal character of a claim" is "independent of rights under the collective-bargaining agreement."  *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (internal quotation marks and citation omitted).  Preemption only applies under this first step where the claim is "founded directly on rights created by [a] collective-bargaining agreement[]."  *Caterpillar*, 482 U.S. at 394.

1   If, however, the right exists independently of the CBA, under the second step, a court

2   must determine "whether the right is nevertheless substantially dependent on analysis of

3   [the CBA]." *Kobold*, 832 F.3d at 1032 (internal quotation marks and citation omitted).  If

4   "substantially dependent," then the claim is preempted by § 301 and federal law applies; if

5   not, then the claim can proceed under state law.  *See Burnside*, 491 F.3d at 1059–60.

6   Determining whether a right is "substantially dependent," in turn, depends on "whether the

7   claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Id.* at 1060 (quoting

8   *Livadas*, 512 U.S. at 125) (alterations in original).  As the Ninth Circuit has acknowledged,

9   "the 'look to'/'interpret' distinction is 'not always clear or amenable to a bright-line test.'"

10  *Id.* at 1060.  It has explained, however, that the term "interpret" should be defined narrowly

11  to mean "something more than 'consider,' 'refer to,' or 'apply.'" *Kobold*, 832 F.3d at 1033

12  (citation omitted).

13  Thus, neither "looking to the CBA merely to discern that none of its terms is

14  reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing

15  a penalty is enough to warrant preemption." *Burnside*, 491 F.3d at 1060 (internal quotation

16  marks, citations, and alterations omitted).  "Similarly, alleging a hypothetical connection

17  between the claim and the terms of the CBA is not enough to preempt the claim." *Id.*

18  (internal quotation marks and citation omitted).  Instead, at the second step of a district

19  court's analysis, "claims are only preempted to the extent there is an active dispute over

20  the meaning of contract terms." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th

21  Cir. 2018); *see also Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is

22  not the subject of dispute, the bare fact that a collective-bargaining agreement will be

23  consulted in the course of state-law litigation plainly does not require the claim to be

24  extinguished.").

25  Generally, before a § 301 claim can be brought to federal court, an employee must

26  "attempt to exhaust any grievance or arbitration remedies provided in the collective

27  bargaining agreement." *Delcostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163

28  (1983).  An employee's "[f]ailure to utilize the grievance procedures, or to invoke them in

1  a timely manner, bars grievants from pursuing remedies in court," absent certain
2  exceptions. *Carr v. Pac. Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990).

3      With this above legal framework in mind, the Court turns to Plaintiff's claims against
4  Defendant.

5           1.   <u>Unpaid Overtime Claim</u>

6      First, Plaintiff claims that Defendant failed to pay overtime wages, in violation of
7  California Labor Code §§ 510 and 1198. *See* (Compl. ¶¶ 51–59). Labor Code § 510(a)
8  defines overtime work and requires employers to pay employees at a rate of no less than
9  one and one-half times the regular rate of pay for such work. However, § 510(a)(2)
10  specifies that these requirements do not apply to "the payment of overtime compensation
11  to an employee working pursuant to . . . [a]n alternative workweek schedule adopted
12  pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code
13  § 510(a)(2). Section 514, in turn, provides:

14        Section[] 510 . . . do[es] not apply to an employee covered by a valid [CBA]
15        if the agreement expressly provides for the wages, hours of work, and working
16        conditions of the employees, and if the agreement provides premium wage
17        rates for all overtime hours worked and a regular hourly rate of pay for those
18        employees of not less than 30 percent more than the state minimum wage.

19  Cal. Lab. Code § 514.

20      The CBAs at issue set forth the wages, hours, and working conditions of employees
21  in detail. *See* (2018 CBA, Arts. 3–10); *see also* (2022 CBA, Arts. 3–10). They define
22  overtime as all hours beyond those in an employee's regularly scheduled workday. *See*
23  (2018 CBA, Art. 3, § F(1)); *see also* (2022 CBA, Art. 3, § F(1)). They require premium
24  compensation at a rate of "time and one-half" for all additional hours worked beyond an
25  employee's regularly scheduled workday, with compensation at a rate of "two (2) times
26  [an employee's] pay rate for all additional consecutive hours worked" beyond "twelve (12)
27  consecutive hours." (2018 CBA, Art. 3, § F(2)–(3)); *see also* (2022 CBA, Art. 3, § F(2)–
28  (3)).

1   The CBAs further set forth minimum pay rates based on an employee's labor grade.
2   *See* (2018 CBA, Art. 4, § C); *see also* (2022 CBA, Art. 4, § C).  Although the minimum
3   pay rate for many of the employee labor grades covered by the CBAs exceeds 130% of
4   California's minimum wage, *see, e.g.*, (2018 CBA, Art. 4, § C, Sch. A-3); *see also* (Ex. 4),
5   for some employees, the pay rate set out in the CBAs falls below 130% of California's
6   minimum wage, *see* (*id.*).  For example, in 2020, California set its minimum wage at $13
7   per hour for employers with 26 or more employees, *see* (Ex. 4), yet the 2020 CBA set the
8   minimum wage for employees in labor grades 9 through 12 at less than 130% of the then-
9   $13 minimum wage, *see* (2018 CBA, Art. 4, § C, Sch. A-3).

10   Relying on § 514's exemption, Defendant contends that Labor Code § 510 does not
11   apply to Plaintiff's claim because the CBAs set forth the wages, hours, and working
12   conditions of the employees in detail, *see* (Motion at 15–16); the CBAs set forth hourly
13   rates "in excess of 30 percent above the then-current California minimum wage for
14   Plaintiff's position," (Motion at 16); and "Plaintiff's wage rate at all relevant times well-
15   exceeded 130% of the existing minimum wage," (Reply at 10).  Further, Defendant argues
16   § 514 does not require that all employees subject to the CBAs be paid at or more than 130%
17   of the minimum wage.  *See* (Motion at 16 ("[E]ven if a small number of employees under
18   the CBAs missed the hourly wage cut-off, the employees that exceeded the requisite 130%
19   hourly wage are still subject to the exemptions")).  In support of this argument, Defendant
20   relies on a line of cases in which courts have applied the exception in § 514, even though
21   some employee categories were paid at less than 130% of the state minimum wage, because
22   the plaintiff and most other employee categories were paid more than 130% of the
23   minimum wage.  *See, e.g.*, *Huerta v. Doubletree Emp. LLC*, No. SACV 23-02433-CJC
24   (ADSX), 2024 WL 890548, at *3 (C.D. Cal. Mar. 1, 2024); *Rodriguez v. USF Reddaway
25   Inc.*, No. 2:22-CV-00210-TLN-DB, 2022 WL 18012518, at *3–4 (E.D. Cal. Dec. 30,
26   2022); *Sachs v. Pankow Operating, Inc.*, No. 221CV08998ABADSX, 2022 WL 489696,
27   at *6 (C.D. Cal. Feb. 16, 2022).

28

In Opposition, Plaintiff does not contest that the CBAs set forth the wages, hours, and working conditions of covered employees. *See* (Opp. at 8–11). Instead, Plaintiff argues that § 514's exemption does not apply to his claim because some employees covered by the CBAs were paid less than 130% of the California minimum wage. *See* (Opp. at 10). Plaintiff argues that "the plain language of Section 514 requires that the CBA provide base hourly rates in excess of 130% of the California minimum wage for all those employees covered by the agreement." (Opp. at 9). In support, Plaintiff relies on a different line of cases holding that § 514 only applies if all employees covered by a CBA are paid at least 130% of the state minimum wage. *See, e.g.*, *Ulloa v. Blackstone Consulting, Inc.*, No. 5:24-CV-01134-HDV-SKx, 2025 WL 306380, at *5 (C.D. Cal. Jan. 27, 2025); *Acu v. Westrock Services, LLC*, No. EDCV 24-854-KK-DTBx, 2025 WL 1703974, at *4 (C.D. Cal. June 18, 2025); *Berreyes v. S. California Gas Co.*, No. 5:22-CV-01223-SSS-SPx, 2023 WL 2536720, at *3 (C.D. Cal. Mar. 16, 2023).

The parties' dispute requires the Court to interpret the meaning of § 514 and, in doing so, the Court starts with the language of the statute itself. *See Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019). If the text of the statute is unambiguous, the Court's inquiry ends. *See Babb v. Wilkie*, 589 U.S. 399, 413 (2020). Based on the language of the statute, the Court agrees with the reasoning of *Allmaras v. University Mechanical & Engineering Contractors, Inc.*, 757 F. Supp. 3d 1094, 1103 (S.D. Cal. 2024) and *Huffman v. Pacific Gateway Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133, at *5 (N.D. Cal. June 21, 2019), and holds that § 514 only applies where all employees are paid at least 130% of the state's minimum wage.

Section 514 uses the words "employee" or "employees" in three clauses. *See* Cal. Lab. Code § 514; *see also Allmaras*, 757 F. Supp. 3d at 1103. Specifically, it states (1) § 510 "do[es] not apply to *an employee* covered by a valid collective bargaining agreement [(2)] if the agreement expressly provides for the wages, hours of work, and working conditions of *the employees*, and [(3)] if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for *those employees* of not less

than 30 percent more than the state minimum wage." Cal. Lab. Code § 514 (emphasis added).

As the *Allmaras* and *Huffman* courts observed, § 514 uses the phrase "an employee" in singular form to simply delineate to whom the exemption from § 510 applies. *Allmaras*, 757 F. Supp. 3d at 1103; *Huffman*, 2019 WL 2563133, at *5. By contrast, § 514 uses the plural phrases "the employees" and "those employees," respectively, to refer to those for which the CBA must (1) expressly "provide[] for the wages, hours of work, and working conditions;" and (2) provide a premium wage rate for overtime and regular hourly pay rates that exceed the state's minimum wage. *See Allmaras*, 757 F. Supp. 3d at 1103 ("'[T]hose employees' and 'the employees' are stated in the context of the statute's two requirements for the exemption [from § 510] to apply."). Although the plural phrase "the employees" is not expressly defined for the second clause, "it stands in stark contradistinction to the earlier reference to 'an employee'" in the first clause, indicating the drafters intended the term "the employees" to apply to all employees. *Huffman,* 2019 WL 2563133, at *5. Thereafter, in setting forth the required rates, the third clause uses the plural term "those employees," which refers back to § 514's earlier use of "the employees" in the second clause, indicating the drafters intended "the employees" to mean all employees covered by the CBA. *See Huffman*, 2019 WL 2563133, at *5. Moreover, from the Court's reading of the statute, it does not contain any language limiting the scope of its uses of the plural "employees" when referring to these two conditions. *See Allmaras*, 757 F. Supp. 3d at 1103. Had the California legislature intended for the second and third clauses to apply to just some employees or the employee asserting the claim, it could have used the singular phrase "the employee" or "that employee." *See Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *7 (N.D. Cal. July 12, 2019).

The Court thus finds from a plain reading of § 514 that it unambiguously requires the CBAs to provide for the "wages, hours of work, and working conditions" and wage

rates set forth in the provision of *all the employees* covered by the CBAs.[3] *See Huffman* 2019 WL 2563133, at \*6 ("It is apparent from the statute's plain language that a CBA must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee."); *see also Sarmiento*, 2019 WL 3059932, at \*7 (stating same). Because the CBAs plainly fail to provide a regular hourly rate of pay of not less than 30 percent more than the minimum wage for some employees, the Court finds § 514 does not bar § 510 from applying to Plaintiff.

Defendant argues, however, that Plaintiff's claim under § 510 is nonetheless preempted because "it is dependent on analysis of the CBAs' specific provisions" as to overtime pay. (Motion at 18–19); *see also Curtis*, 913 F.3d at 1155 (analysis of whether § 514 applies only addresses step one of the preemption analysis). For example, Defendant notes that "the CBAs detail specific premium pay for employees assigned to a 4/10 work schedule" and "incorporate complicated formulae for payment of overtime premiums" for work on Saturday and Sunday. (Motion at 18 (internal quotation marks omitted)). However, as discussed above, "[w]hen the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption." *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 998 (9th Cir. 2007). Because Defendant has not shown any dispute over the terms of the CBAs' overtime provisions, the Court does not find Plaintiff's claim under § 510 to be preempted at the pleading stage. *See Schurke*, 898 F.3d at 921. Thus, the Court DENIES the Motion as to Count I.

---

[3] The Court does not find the reasoning of the decisions Defendant cites in its briefing to be persuasive. None of these decisions are focused on the statutory text of § 514 and, instead, appear to be primarily concerned with considerations of public policy. *See Huerta*, 2024 WL 890548, at \*3 (focusing on legislative intent without analyzing the statutory text of § 514); *Rodriguez*, 2022 WL 18012518, at \*3 (not addressing why § 514 applies where some employees covered by a CBA are paid less than 130% of the state minimum wage); *Sachs*, 2022 WL 489696, at \*6 (suggesting without explanation that the phrase "employees" may refer to "all employees within the same classification as the employee bringing the action").

2.    Meal and Rest Period Claims

Next, Plaintiff claims that Defendant failed to provide adequate meal and rest periods, as required by California Labor Code §§ 512 and 226.7.  *See* (Compl. ¶¶ 60–79). Defendant does not argue that Plaintiff's right to meal and rest periods was "founded directly on rights created by" the CBAs.  *Caterpillar*, 482 U.S. at 394.  However, Defendant argues that these claims are nevertheless preempted because Plaintiff's right to meal and rest periods "require interpretation of [the CBAs], given that the CBA[s] specifically provide[] for meal and rest periods and define[] their parameters."  (Motion at 20).

As with the overtime claim, however, Defendant has not identified any provision in the CBA on which the meal and rest period claims substantially depend.  Defendant does not identify any dispute between the parties as to the meaning of any CBA provision related to meal and rest periods.  *See Schurke*, 898 F.3d at 921.  Therefore, the Court can determine the applicable hourly rates simply by looking to the CBA, without having to "interpret" any provisions therein.  *See Burnside*, 491 F.3d at 1060.  The Court therefore DENIES the Motion as to Counts II and III.

3.    Unpaid Wages Claim

Plaintiff claims that Defendant has failed to pay wages for all hours of work at the legal minimum wage rate, in violation of California Labor Code §§ 1194, 1197, and 1197.1.  *See* (Compl. ¶¶ 80–85).  Section 1197 provides that "the payment of a lower wage than the minimum . . . is unlawful."  Cal. Lab. Code § 1197.  Section 1194 provides that, "[n]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage."  Cal. Lab. Code § 1194(a).

While the factual allegations underlying this claim are the same as those underlying the unpaid overtime claim, "there is no exemption to section 1197."  *Rodriguez v. S E Pipeline Constr. Co.*, No. 223CV08769WLHMRW, 2023 WL 9319043, at *4 (C.D. Cal. Dec. 1, 2023).  Because Plaintiff cites to state law as the basis for this claim, and because state law requiring payment of at least minimum wage is not waivable under a CBA,

Plaintiff's claim is based on a right conferred by state law, not the terms of the CBAs. *See Allis-Chalmers Corp.*, 471 U.S. at 212 ("[Section] 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."); *see also Caterpillar*, 482 U.S. at 394–95 (explaining that, even where a plaintiff could bring suit under § 301, a plaintiff is not required to do so).

Turning to the second step of the analysis, Defendant has failed to identify any provisions of the CBA on which this claim is "substantially dependent." *Burnside*, 491 F.3d at 1059. In support of preemption, Defendant asserts that adjudicating this claim would require the Court to interpret "numerous provisions of the CBAs requiring pay for all hours worked," but does not explain why such interpretation is necessary to resolve Plaintiff's claim. *See* (Motion at 20–21). As noted above, Plaintiff's claim is not preempted simply because the Court may need to "consider," "refer to," and "apply" the terms of the CBA. *See Kobold*, 832 F.3d at 1033. Instead, in the second step of the Court's preemption analysis, claims are only preempted where the parties dispute the meaning of a term within the CBA. *See Schurke*, 898 F.3d at 921. Defendant has not shown any such dispute. Thus, the Court DENIES the Motion as to Count IV.

### 4. Untimely Payment Claim

Plaintiff also claims that Defendant failed to pay wages on a timely basis, in violation of California Labor Code § 204. *See* (Compl. ¶¶ 92–97). Section 204(a) provides that "[a]ll wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code § 204(a). Section 204(c) then states "[h]owever, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Cal. Lab. Code § 204(c). Section 204(d) provides that "[t]he requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period." Cal. Lab. Code § 204(d).

Here, the CBAs provide that "[h]ourly employees shall be paid bi-weekly on a day designated by the Company." (2018 CBA, Art. 4, § G(2)); *see also* (2022 CBA, Art. 4, § G(2)). By contrast, under § 204(a), employers are required to make semi-monthly payments. "While similar, a biweekly arrangement ensures that twice a year employees receive three payments in a month." *Ariola v. Raytheon CA Techs. Corp.*, No. CV234664MWFAGRX, 2023 WL 5764296, at *8 (C.D. Cal. Sept. 6, 2023); *see also Rodriguez*, 2022 WL 18012518, at *5. Thus, the CBAs prescribe a different schedule for payment than § 204(a).

However, the CBAs comply with § 204(d), which allows employers to pay employees on a biweekly basis so long as wages are paid within a week of the close of a payroll period. *See* Cal. Lab. Code § 204(d). "[D]istrict courts have reached opposite conclusions as to whether California Labor Code § 204(c) applies independently of California Labor Code § 204(d) or not." *Corlew v. Superior Duct Fabrication, Inc.*, No. 2:22-CV-04466-JLS-E, 2022 WL 17834201, at *8 (C.D. Cal. Dec. 21, 2022). The majority of courts to consider the issue have concluded that a claim is preempted under § 204(c) so long as the employee bringing the claim is subject to a CBA that sets out a different timing for payments than required under § 204(a). *See Ariola*, 2023 WL 5764296, at *8–9; *Corlew*, 2022 WL 17834201, at *7–9; *Johnson v. San Francisco Healthcare & Rehab Inc.*, No. CV 22-1982-JSC, 2022 WL 2789809, at *8–9 (N.D. Cal. July 15, 2022); *Rodriguez*, 2022 WL 18012518, at *5 n.5. However, at least one decision has found that a CBA does not differ from § 204 so long as the CBA complies with § 204(d). *See Mmoka v. Ace Parking Mgmt., Inc.*, No. 21-CV-1693-MMA (MSB), 2022 WL 104282, at *9 (S.D. Cal. Jan. 11, 2022).

The Court is persuaded by the reasoning of the majority position. Section 204 is titled "Semimonthly payments; exceptions." This provision begins by setting out the "default pay arrangement from which CBAs may deviate." *Corlew*, 2022 WL 17834201, at *7. Section 204(a) requires semimonthly payments and prescribes requirements for the dates by which employers must issue semimonthly pay. *See* Cal. Lab. Code § 204(a).

Section 204(b) adds that "all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period." Cal. Lab. Code § 204(b)(1). Section 204(c) then provides an exception to the "default" rules set out in subsections (a) and (b), as indicated by using the word "[h]owever" at the beginning of subsection (c). *See Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *4 (C.D. Cal. Nov. 22, 2019) (use of the word "however" in § 204(c) "indicate[s] that the default rule" specified in subsections (a) and (b) "does not apply if the remainder of subsection (c) is met"); *see also Ariola*, 2023 WL 5764296, at *9 (similar). Section 204(d) then follows, setting out another exception to the default rule set out in subsections (a) and (b). *See Corlew*, 2022 WL 17834201, at *8 ("California Labor Code § 204(d) . . . is best construed as a satisfaction provision[.]"); *see also Ariola*, 2023 WL 5764296, at *9. In doing so, § 204(d) "does not create any rights as to timely payment" and, therefore, "has no bearing on the exemption for employees covered by a CBA as described in 204(c)." *Corlew*, 2022 WL 17834201, at *8 (internal quotation marks and citation omitted).

Because the exception set out in § 204(c) applies, Plaintiff's claim is preempted. *See Allmaras*, 757 F. Supp. 3d at 1107 ("Courts in this Circuit have consistently held that when § 204(c)'s requirements are met, claims under § 204 . . . are preempted."); *see also Rose v. Cemex Constr. Materials Pac., LLC*, No. 2:23-CV-01979 WBS AC, 2024 WL 307790, at *5 (E.D. Cal. Jan. 26, 2024) ("[C]laims subject to a statutory exception are completely preempted."). The Court thus GRANTS the Motion as to Count VI.

### 5.   Expense Reimbursement Claim

Plaintiff also claims that Defendant failed to indemnify employees for employment-related expenses, in violation of California Labor Code § 2802. *See* (Compl. ¶¶ 110–14). However, the Complaint fails to allege any category of unreimbursed expenses. *See generally* (*id.*). Defendant argues that Plaintiff's expense reimbursement claim is both preempted under the LMRA and fails to state a claim. *See* (Motion at 22–24). In

Opposition, Plaintiff responds to Defendant's argument as to preemption but does not meaningfully address Defendant's argument for dismissal. *See* (Opp. at 15–16).

In support of preemption, Defendant argues that Plaintiff's expense reimbursement claim would require the Court to interpret the CBAs' "specific provisions related to certain reimbursements." (Motion at 23). However, given that Plaintiff has not specified what expenses Defendant failed to reimburse and Defendant has not shown that the parties' dispute any term in the CBAs related to expense reimbursement, the Court does not agree that Plaintiff's expense reimbursement claim would necessarily require the Court to "interpret" the CBAs. *See Kobold*, 832 F.3d at 1033; *Schurke*, 898 F.3d at 921.

Nevertheless, the vague and generalized allegations in support of Plaintiff's expense reimbursement claim are insufficient. To state a claim, the complaint must "identif[y] the particular expenses that were not reimbursed," *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016), and allege facts to show that those expenses were necessary "either in the discharge of [Plaintiff's] duties or in obeying [Defendant's] directions," *Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS BLM, 2014 WL 2860287, at *6 (S.D. Cal. June 23, 2014). The Complaint fails to do so and, therefore, fails to state a claim. The Court thus GRANTS the Motion as to Count IX.

### 6. Derivative Claims

Finally, Plaintiff asserts claims alleging Defendant's failure to provide accurate wage statements, failure to pay all wages due at separation, failure to keep accurate records, and violation of California's Unfair Competition Law ("UCL"). *See* (Compl. ¶¶ 86–91, 98–109, 115–121). According to Defendant, these claims are derivative of Plaintiff's overtime, meal period, and rest period claims. *See* (Motion at 24). However, as noted above, Defendant has failed to show that Plaintiff's overtime, meal period, and rest period claims are preempted. *Cf. Brown v. Auto Warehousing Co.*, No. 24-CV-07300-RFL, 2025 WL 3114453, at *3 (N.D. Cal. Nov. 6, 2025) (finding "derivative claims" to not be preempted where underlying claims were not preempted). Defendant also argues that Plaintiff's claims alleging inaccurate wage statements and failure to pay all wages due at

separation are preempted because these "claims require interpretation and application of detailed provisions regarding the timely payment of wages set forth in the CBAs." (*Id.* at 25 n.5). However, Defendant has not shown that adjudicating these claims would require the Court to address a dispute as to the meaning of any provision in the CBAs. *See Schurke*, 898 F.3d at 921. As such, Defendant has not shown these claims are preempted. The Court thus DENIES the Motion as to Counts V, VII, VIII, and X.

### B.   Exhaustion of Remedies

As discussed above, before an employee may bring suit under § 301, the employee must ordinarily "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello*, 462 U.S. at 163. "[W]here the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). An employee's "[f]ailure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court." *Carr*, 904 F.2d at 1317. The failure to exhaust grievance procedures may be excused only upon a showing that "the union representing the employee in the grievance/arbitration procedure [has acted] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164. To establish such an exception, the plaintiff must affirmatively allege "a hybrid § 301/fair representation claim" in the complaint. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 988 (9th Cir. 2007) (citation omitted).

Article 24 of the CBAs sets out the exclusive process through which the Company and the Union will resolve employee grievances. *See* (2018 CBA, Art. 24, § D(1)); *see also* (2022 CBA, Art. 24, § D(1)). In general, an aggrieved employee must hold an initial meeting with their supervisor and a Union representative. *See* (2018 CBA, Art. 24, § B(1)); *see also* (2022 CBA, Art. 24, § B(1)). If the initial meeting does not resolve the grievance, the employee may submit a formal written grievance. *See* (*id.*). The Company must then

meet again with the Union to discuss the grievance.  *See* (*id.*).  If the grievance is not resolved by this second meeting, the Union may submit the grievance to arbitration.  *See* (*id.*).  The arbitrator's decision is final and binding on the parties.  (2018 CBA, Art. 24, § E(1)); *see also* (2022 CBA, Art. 24, § E(1)).

Plaintiff has not alleged that he attempted to exhaust the CBAs' grievance process before bringing suit and has not affirmatively alleged a hybrid § 301/fair representation claim.  *See generally* (Compl.).  The express terms of the CBAs make the grievance process the exclusive remedy for any alleged violation of the CBAs.  Thus, because Plaintiff failed to exhaust the remedies specified in the CBAs, and, because he does not contend that the Union breached its duty of fair representation, Plaintiff is barred from pursuing any § 301 claims in court.  As discussed above, this means that Plaintiff's untimely payment claim must be dismissed.  However, Plaintiff had no duty to exhaust the CBAs' grievance process before bringing his remaining state law claims, and these claims are not preempted.

### C.    Leave to Amend

Plaintiff has requested leave to amend.  Generally, "in dismissals for failure to state a claim, a district court should grant leave to amend."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Nevertheless, a district court may, in its discretion, deny leave to amend when amendment would be futile.  *Zucco*, 552 F.3d at 1007.  Amendment is considered futile where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).  The Court does not find leave to amend futile as to Plaintiff's expense reimbursement claim and will grant Plaintiff one additional opportunity to cure the deficiencies identified in this Order.  However, because Plaintiff's untimely payment claim is preempted, amendment as to this claim is futile.  *See Edwards v. Lockheed Martin Corp.*, 617 F. App'x 648, 650 (9th Cir. 2015) (holding that it would be futile to grant leave to amend a preempted claim).

### D.    Request to Consolidate and Stay Proceedings

Following the parties' briefing and submission of the Motion, the parties filed a document entitled, "Joint Stipulation to Consolidate Related Cases Pursuant to FRCP 42(A)(2) and Stay Actions Pending Mediation." *See* (ECF No. 31 ("Stipulation")).  There, the parties requested that the Court consolidate *Griffin v. Stellant Systems, Inc.*, Case No. 2:25-cv-09615-SPG-SK with this action.  *See* (Stipulation at 5).  The parties further request that, following consolidation, the Court vacate the deadlines set out in the current scheduling order and stay the consolidated proceedings until July 30, 2026, "so that the parties may devote all costs and resources to mediation efforts." (*Id.* at 3, 5).  The parties request that the Court also stay discovery, except for good faith informal discovery in connection with mediation and Plaintiff's deposition, during the pendency of the stay.  *See* (*id.* at 4).  Having considered the Stipulation, and finding good cause therefor, the Court GRANTS the Stipulation.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion.  The Court ORDERS as follows:

1.    *Griffin v. Stellant Systems, Inc.*, Case No. 2:25-cv-06760-SPG-SK and *Griffin v. Stellant Systems, Inc.*, Case No. 2:25-cv-09615-SPG-SK are consolidated into a single action.  All further filings shall bear the case number 2:25-cv-06760-SPG-SK.

2.    All dates set out in the Court's scheduling order, (ECF No. 25-1), are vacated, and the case is stayed until July 30, 2026.  During the pendency of the stay, discovery shall also be stayed, with the exception of Plaintiff's deposition and good faith informal discovery in connection with mediation.

3.    The parties shall file a joint status report by July 30, 2026, to inform the Court of the status of the case and, should the case not settle during mediation, proposed deadlines for an amended case schedule.

4.  Unless the Court orders otherwise, Plaintiffs shall file a consolidated amended complaint in the consolidated case *Griffin v. Stellant Systems, Inc.*, Case No. 2:25-cv-06760-SPG-SK.   The consolidated amended complaint shall be limited to the claims pleaded in the operative complaints brought in each of the respective actions.

5.  The Court TERMINATES (JS-6) the matter *Griffin v. Stellant Systems, Inc.*, Case No. 2:25-cv-09615-SPG-SK.

**IT IS SO ORDERED**

DATED:  February 10, 2026



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE